IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| AMERICAN TELUGU ASSOCIATION, an Illinois Not-for-Profit Corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>SATYA KANDIMALLA, KARUNAKAR MADHAVARAM, and AMERICAN TELANGANA ASSOCIATION, an Illinois Not-for-Profit Corporation,<br><br>*Defendants.* | 1:16-cv-02404<br><br>The Honorable Harry D. Leinenweber |

## PLAINTIFF'S MOTION FOR SANCTIONS

NOW COMES Plaintiff, AMERICAN TELUGU ASSOCIATION, by and through its attorney, LAW OFFICES OF MARK S. BISHOP, LLC, and for its Motion for Sanctions, states as follows:

1. Plaintiff seeks sanctions against the Defendants for requiring Plaintiff to unnecessarily spend thousands of dollars seeking emergency injunctive relief a second time in this case based on a meritless assertion that Plaintiff's amended complaint vitiated the Standstill Agreement that had been in place in this case since February 19, 2016.

2. The underlying dispute in this case began back on February 15, 2016 when Defendant Satya Kandimalla ("Kandimalla") sent Plaintiff an email demanding that Plaintiff remove all of its content from the ataworld.org domain name because Kandimalla claimed

ownership and was taking the domain name "back." See Exhibit 5 to Decl. of Sudhakar Perkari, ECF No. 4-1, PageID #135.

3. With only four (4) days to act based on Kandimalla's short deadline, Plaintiff commenced this action by filing a Complaint, along with an Emergency Motion for Entry of a Temporary Restraining Order and filed a complaint, motion for temporary seeks entry of a Temporary Restraining Order and Expedited Discovery Order, and a Memorandum of Law in Support.

4. The case was assigned to this Court, but the Honorable Harry D. Leinenweber was unavailable on Friday February 19, 2016 when the motion was to be presented, so the motion was instead set before the Emergency Duty Judge, the Honorable James B. Zagel.

5. Before the Court began the hearing on Plaintiff's Motion, the parties negotiated a standstill agreement whereby the status quo would be maintained until either i) further agreement of the parties or ii) further order of the court (the "Standstill Agreement"). The parties notified Judge Zagel of the Standstill Agreement and the case was called. The parties then read the terms of the Standstill Agreement into the record and, in light of the agreement, Judge Zagel entered and continued Plaintiff's Motion for Temporary Restraining Order and Expedited Discovery.

6. A copy of the transcript from the proceedings on February 19, 2016 is attached hereto as Exhibit "A."

7. The same day, Plaintiff's Counsel sent Defense Counsel an email to again confirm the precise terms of the Standstill Agreement that had been reached. A true and accurate copy of that email communication between counsel is attached hereto as Exhibit "B."

8. On March 4, 2016, as agreed, Defendants filed their written response to Plaintiff's Emergency Motion for Temporary Restraining Order.

9. In Defendants' response, Defendants pointed out Plaintiff's Motion for TRO and the Supporting Memorandum related to a claim for Anticybersquatting Consumer Protection Act, 15 U.S.C.A. § 1125(d) but the title to Count I of the Plaintiff's Complaint referred instead to a claim for Service Mark Infringement pursuant to 15 U.S.C.A. § 1125 (a).[1]

10. Realizing that Plaintiff had failed to correct the title to Count I from an earlier draft version of the Complaint (even though the allegations within Count I were still correct for the Anticybersquatting Consumer Protection Act claim), Plaintiff amended the complaint as a matter of right in accordance with, and within the time limits provided under, Federal Rules of Civil Procedure, Rule 15(a)(1)(A).

11. In Amending the Complaint, Plaintiff only changed the title of Count I to reflect that it was a claim under 15 U.S.C.A. § 1125(d) instead of § 1125(d), and added one additional phrase to paragraphs 42 and 43 under Count II to add an allegation that the Defendant's breach of fiduciary duty included a usurped corporate opportunity.

12. On April 6, 2015, without any prior warning, Defense Counsel sent Plaintiff's Counsel an email stating:

> As you are well aware, your Emergency Motion for TRO was filed on February 19, 2016. By agreement, we were given two weeks thereafter to respond to the motion. Based on the fact that we did not have a sufficient amount of time to review and respond to your emergency motion, we entered into a standstill agreement on February 19, 2016. Thereafter, we timely filed our Response to your Emergency Motion for TRO. Rather than waiting for the Court's ruling on your motion, you instead chose to file a First Amended Complaint, which acts to supersede the complaint upon which your Emergency Motion for TRO was premised. It is thus now unclear whether your Emergency Motion for TRO remains pending and whether Court intends to rule on it. Based on the foregoing, we are hereby terminating the February 19, 2016, standstill agreement,

---

[1] Defendant recognized this as a scrivener's error as well – Defendant only took twelve lines of text in the argument section of the response to address the inconsistent titling issue while spending the balance of the "likelihood of success" section of Defendant's response addressing an Anticybersquatting Consumer Protection Act Claim.

> effective 10:00 am on Friday, April 8, 2016. Should you have any questions, feel free to contact me.

13. A true and accurate copy of Defense Counsel's April 6, 2016 email is attached hereto as Exhibit "C."

14. Defendant's position regarding the Plaintiff's amendment of the complaint was nothing more than a thinly disguised attempt to articulate some justification for the Defendant's threatened direct violation of the party's February 19, 2016 Standstill Agreement. Plaintiff's Counsel contacted Defense Counsel in an attempt to clarify the basis for the threatened breach and to see if there was some way to avoid further emergency motion practice over the matter by at least holding off until the next week's pre-scheduled status hearing. Defense Counsel refused to agree to delay Defendants' threatened violation of the Standstill Agreement and offered no further reasonable explanation as to why Defendants were justified in violating the Standstill Agreement. A true and accurate copy of the email chain between the attorneys is attached here to as Exhibit "D."

15. Based upon Defendant's bad faith termination of the Standstill Agreement, Plaintiff was again forced to pursue emergency injunctive relief on only two-day's notice.

16. On April 7th, 2016, Plaintiff prepared and filed Plaintiff's Emergency Motion for Hearing on Plaintiff's Previously Filed Motion for Temporary Restraining Order and Expedited Discovery. See ECF No. # 23.

17. The Emergency Motion was presented before the Honorable Gary Feinerman who was serving as the Emergency Duty Judge on April 8, 2016.

18. A true and accurate copy of the Transcript of Proceedings from the April 8, 2016 hearing is attached hereto as Exhibit "E."

4

19. When the Court asked Defense counsel for their position on the Motion, Defense Counsel argued that because Plaintiff had filed an amended complaint, the original Emergency Motion for Temporary Restraining Order was less "emergent." See Ex. E, 3:11-14.

20. Defense counsel tried to argue that the amendment to the complaint changed the underlying nature of the claim, but this contention was rejected outright by the Court. See Ex. E, 4:8 to 6:4.

21. In ruling on the Motion, Judge Feinerman stated "I'm going to grant the TRO[2] and I'm going to set forth my reasons on the record." See Ex. E, 5:25 to 6:1.

22. In so ruling, Judge Feinerman addressed the Defendant's rationale for terminating the Standstill Agreement stating:

> The defendants' rationale for terminating the standstill agreement, which is that the plaintiff filed a first amended complaint that made very modest changes, including one of them being the correction of a scrivener's error that everybody knew was a scrivener's error, **that argument is not just meritless. It's so preposterous that the arguments that the defendants made this week in its correspondence may end up damaging their credibility in front of Judge Leinenweber as this case goes forward.**" Ex. E, 7:15 to 7:24 (emphasis added).

23. The Court found that neither the scrivener's error nor the addition of allegations about a second way in which Defendants' their fiduciary duty had any effect on the briefing for the Motion for Temporary Restraining Order. See Ex. E, 9:8 to 9:14.

24. Lastly the Court rejected Defendants' final argument that, in Defense Counsel's view, this Court was not going to rule on the original Motion for Temporary Restraining Order since it had not already done so in "nearly two months." Judge Feinerman indicated there was simply no basis for making that argument either. See Ex. E, 9:22 to 10:11.

---

[2] When the parties were last before the Court on April 13, 2016, Defense counsel affirmatively denied that Judge Feinerman had entered a temporary restraining order.

5

25. While the Court ultimately granted the temporary restraining order to preserve the status quo, the Defendants were completely unjustified in forcing the Plaintiffs to seek this relief on an emergency basis in the first instance. Plaintiff's Counsel attempted to meliorate the situation by suggesting the Parties bring Defense Counsel's concerns to the Court's attention at the previously scheduled April 13, 2016 status date – just days away – but Defense counsel refused. See Ex. D.

26. The Court has inherent authority to impose sanctions for bad faith conduct of the litigants before it. See Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991). A court may impose sanctions if it finds that a party shows bad faith in delaying or disrupting litigation. Id. at 46. The imposition allows the Court to "make the prevailing party whole for the expenses caused by his opponent's obstinacy." Id.

27. In order to prepare for and present Plaintiff's *second* motion on an emergency basis in two months, Counsel was required to spend 12.1 hours of time at a rate of $275.00 per hour for a total charge to Plaintiff of $3,330.00 in attorney's fees. See Decl. of Mark S. Bishop filed contemporaneously with this Motion.

28. Under the circumstances presented here, Defendants were without justification in renouncing the Standstill Agreement thereby forcing Plaintiff to seek additional emergency relief. Defense Counsel refused to delay just five (5) days until the next status hearing and they are directly responsible for causing Plaintiff to incur additional legal fees. Plaintiff seeks a sanction only in the amount of the additional attorney's fees that were necessary to respond to the Defendants' unreasonable and unjustified position.

WHEREFORE, Plaintiff, American Telugu Association, respectfully requests that this Court enter an order imposing sanctions upon the Defendants in the amount of $3,330.00 for the reasons set forth herein, and for any other such relief as this Court deems equitable and just.

                                          Respectfully submitted,

                                          /s/ Mark S. Bishop
                                          _____

Mark S. Bishop [#6269424]
**LAW OFFICES OF MARK S. BISHOP, LLC**
4320 Winfield Road, Suite 200
Warrenville, Illinois 60555
(630) 836-8577
(888) 599-1580 facsimile
mbishop@msblawoffice.com